ATTACHMENT A

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

LEAR CORPORATION EEDS AND ) 
INTERIORS, )
 )
      Plaintiff, )
 )
v. ) CIVIL ACTION NO. _____
 )
KIMBERLY KING, )
 )
      Defendant. )
 )

## VERIFIED COMPLAINT

### Parties

1.    Plaintiff Lear Corporation EEDS and Interiors, ("Lear") is a Delaware corporation doing business in Montgomery County, Alabama and Dallas County, Alabama.

2.    Defendant Kimberly King ("King") is a resident of Dallas County, Alabama, formerly employed by Lear, but committed some acts complained of in Montgomery, Alabama.

### General Allegations

3.    Lear manufactures automotive seats and components at plants in Selma, Alabama and Montgomery, Alabama; the Selma plant supplies only Hyundai Motor Manufacturing Alabama, LLC ("HMMA") in Montgomery.

4.    King was employed in the Selma plant from 2004 until March 16, 2015.

    a.    Lear has operated the Selma plant since 2008 when it acquired the plant from its prior owner Renosol.

    b.    Lear places great emphasis on the safety of its 82 production employees at the Selma plant.

    c.    The manufacturing process for making car seats calls for small amounts of a chemical (also used in mattresses) known as toluene diisocyanate ("TDI").

    d. Lear carefully keeps track of employee exposure to TDI by using plant monitors that operate throughout the production process, and performs employee training and periodic atmospheric testing as well; no Lear employee has ever received workers' compensation as a result of any condition relating to TDI exposure at the plant.

   5. Some or all of the relevant acts giving rise to this action are being directed toward HMMA and occurred in Montgomery County, Alabama, where HMMA's facility is located.

    a. King has a long history of an asthmatic condition with etiology outside the workplace and preceding her employment with Lear.

    b. On May 10, 2014, Kim King reportedly told the *Selma Times* that Lear in Selma exposed employees to chemicals that caused her asthma-like symptoms.

    c. On May 16, 2014, an independent third-party consulting group tested the air in the Lear Selma plant and found it safe, with levels of TDI, another chemical called MDI, particulates, and mold all well below the OSHA maximum safe level, or, if they lacked an OSHA maximum, well below American Council of Government Hygienists ("ACGH") safe levels; employees (including King) received the results on May 21, 2014 at a group meeting, and individually on June 3, 2014.

    d. On May 20, 2014, OSHA made an unannounced visit to Lear Selma plant as the result of an employee complaint relating to OSHA recordkeeping and alleged TDI exposure.

    e. On May 27 and 28, 2014, an OSHA industrial hygienist conducted sampling for TDI, reviewed the Selma plant's hazard communication written program respecting chemicals and related training records, observed hazardous materials alarm response, considered a ventilation report, observed TDI stationary monitors, and interviewed numerous employees.

DOCUMENT 2

(1) Lear retained an independent third party industrial hygienist from the EI Group, Inc. to do side by side sampling of TDI while OSHA was sampling on May 28.

(2) The results of the second round of sampling both from the third party and from OSHA showed appropriate time weighted test levels well below the ACGIH maximum safe level for exposure over time.

(3) On June 4, 2014, these test results referenced next above were discussed individually with each employee who wore a sampling pump and results were posted on the safety board for all employees.

f. On June 23, 2014, OSHA gave Lear its May 28, 2014, sampling test results that were consistent with those of the EI Group, Inc. and showed that levels well below the OSHA maximum safe limit; Lear notified all employees (including King).

g. Notwithstanding the foregoing, King on July 14, 2014, was the subject of an nbc.com news article in which she claimed the plant atmosphere was unsafe and making her sick, a claim she repeated a day later in *al.com*.

h. On July 17, 2014, OSHA again conducted Selma plant TDI sampling.

(1) Samples conducted were compared to the ACGIH limits for an 8 hour time weighted average.

(2) The independent third party EI Group also conducted side by side sampling.

i. Both sets of results were well below OSHA and ACGIH maximum safe level for exposure over time, and Lear shared these with employees when it received them.

(1) Lear received EI group results on July 21, 2014.

(2) Lear received OSHA results December 2014.

DOCUMENT 2

(3) OSHA has never cited Lear's in Selma plant for airborne or any other kind of TDI exposure to any employee at any time.

j. Notwithstanding the foregoing, King in late July of 2014 began wearing a medical mask at work, but it was quickly apparent safety was not the issue.

(1) In an effort to satisfy her, Lear gave King an easier assignment in the warehouse (away from the plant) for the same pay and benefits.

(2) Upon receiving this new assignment, immediately filed a legal challenge and demanded to be returned to the area she claimed (and continues to claim) is unsafe.

k. On July 23, 2014 though she never filed paperwork seeking workers compensation, King was offered the opportunity to be medically evaluated to determine if eligible for workers' compensation but she refused; King repeatedly has been offered the opportunity to produce any facts to Lear that would support her statements but has not done so.

l. OSHA again returned for Selma plant testing on November 13, 2014; Lear again did parallel testing, and both sets of tests again revealed the atmosphere was safe and well within OSHA and ACGIH maximum safe levels, and employees (including King) were informed.

m. Notwithstanding the foregoing, King posted a 7:22 video on Facebook stating that TDI in the workplace caused her illness.

n. King was provided the opportunity to offer supporting facts but refused January 21, 2015, and was suspended.

o. While on suspension, King repeated this behavior thereafter and was suspended again.

p. On March 4, 2015, King posted the following on Facebook:

DOCUMENT 2

23107901 v1                                4



q. Most recently, on March 5, 2015, King tried to force her way onto HMMA premises in Montgomery County to leave a misdated letter there that repeats these false claims.

(1) She and others were stopped at the HMMA guard shack for about 30 minutes:



(2) The letter stated in relevant part:

"Workers at the Lear Corporation plant in Selma make seats for Hyundai. For years, those workers have been exposed to dangerous chemicals, called isocyanates, which are used to make the foam that is inserted into the seats.

DOCUMENT 2

> These chemicals are known to cause life-long breathing problems, including chronic asthma."
>
> * * *
>
> "...a recent OSHA investigation found numerous serious safety concerns at the plant, and concluded that <u>some workers were exposed to chemicals that made them sick</u>."
>
> * * *
>
> "**Hyundai has the power** and the responsibility, through its social responsibility policies, to require Lear to make the necessary investments to ensure good, safe, fair working conditions throughout its supply chain."

Emphasis added.

 r. King repeated her attack on Lear's customer in identical March 6, 2015 posts to *al.com* and *The Root*:

> "I work hard all day making foam for Hyundai car seats, but Hyundai refuses to take responsibility for the fact that we are getting sick and struggling on low wages at its supplier plants like Renosol [Lear's Selma Plant]," said Kim King, who has worked at Renosol [Lear's Selma Plant] for more than nine years."

 s. On March 12, 2015, the following was posted on Facebook:



DOCUMENT 2

23107901 v1

6

6. In all, between May 20, 2014 and November 13, 2014, OSHA conducted six visits to the Lear Selma facility, took numerous air samples and interviewed numerous plant employees; none reflected exposure above recognized limits causing illness and none close to legal limits, and OSHA never cited Lear for any unsafe TDI exposure, and OSHA never made any determination that anything in the workplace made anyone sick.

7. During the above period and ever since, King has continued to make false statements and assertions to the media and third parties against Lear that she was being forced to work in an unsafe work atmosphere despite repeated assurances that Lear had received confirmations in testing and monitoring by OSHA and by independent laboratories that the air in the plant is safe and in conformity with all safety standards.

8. King has known the statements being made by her were false when she made them.

9. King has made and is continuing pursue a pattern of distributing false statements for purposes of having Lear's ability to do business interfered with, harming Lear's relationship with its customer, adversely affecting Lear customers elsewhere, and harming Lear's reputation.

10. King's pattern of conduct has harmed and is harming Lear in ways that no legal remedy can address adequately.

**Count I - Intentional Interference with Business Relations**

11. Plaintiff re-avers and realleges the allegations contained in paragraphs 1-10 as if fully set forth herein.

12. The actions of Defendant constitute intentional interference with the business relationship between Plaintiff and the sole customer for its Selma plant.

13. At all material times, Defendant had actual knowledge of the existence of the relationship with which she interfered and continues to interfere.

DOCUMENT 2

14. As King knew or should have known that making false statements designed to harm customer relationships was a discharge offense under Lear's employee handbook, and as King knew the statements and assertions were false when she made them, she did so with malice and no justification.

15. Plaintiff has been and will continue to be irreparably injured as a result of Defendant's tortious interference.

16. The harm done by Defendant threatens the Selma Plant's viability by deliberately targeting Plaintiff's relationship with its only customer; Defendant has irreparably injured the interests of Plaintiff, and such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests a temporary restraining order be entered against Defendant, a preliminary and permanent injunction, and any damages for the cost of efforts to replace contractors that have declined to do business as a consequence of King's disinformation and otherwise, as appropriate, and any other such relief as the Court deems appropriate.

### Count II - Defamation

17. Plaintiff re-avers and realleges allegations contained in paragraphs 1-16 as if fully set forth herein.

18. The above referenced statements made and published by Defendant were false and defamatory statements concerning Plaintiff.

19. Defendant made and published to third parties these false and defamatory statements against Plaintiff without reasonable care as to the truth or falsity of the statements.

20. Although Defendant knew or should have known that the statements were false and defamatory months ago, Defendant continues to publish the false and defamatory statements with malice and without regard to Plaintiff and published these statements to hundreds and perhaps thousands of third parties.

   a. Defendant continues to publish her false and defamatory statements after receiving test results reflecting they are false and defamatory.

   b. Defendant continues to publish her statements after being apprised that they are damaging to Lear's reputation and relationship with customers.

   c. Defendant continues to publish her statements after being provided more than one opportunity to provide any facts supporting her statements and being unable to do so.

   d. Defendant continues to publish knowingly false, knowingly injurious statements in literally hundreds of media outlets.

21. The actions taken by Defendant and continue to be taken constitute unprivileged publications to countless third parties—including, among others, customers of Plaintiff and of its customer, HMMA-- of the above described false and defamatory statements about Plaintiff.

22. The acts of Defendant are being done intentionally or recklessly and with malice in an attempt to injure Plaintiff's reputation.

23. The Defendant's statements are being made with the intent to injure Plaintiff in its business and reputation.

24. Defendant's actions continue to be the proximate cause of damages to Plaintiff.

25. The harm done threatens Lear's Selma Plant's viability by targeting its relationship with its only customer.

DOCUMENT 2

26. No legal remedy can address resulting continuing harm adequately, and the balancing of the equities favor enjoining Defendant's activity.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests a temporary restraining order be entered against Defendant, a preliminary and permanent injunction, and any damages for the cost of efforts to replace contractors that have declined to do business as a consequence of Defendant's disinformation and defamation, repair reputation and otherwise, as appropriate, and any other such relief as the Court deems appropriate.

Respectfully submitted,

*s/ Joseph C. Espy, III*
Joseph C. Espy, III (ESP002)
Attorney for Plaintiff
Lear Corporation EEDS and Interiors

**OF COUNSEL:**
MELTON ESPY & WILLIAMS, P.C.
255 Dexter Avenue
Montgomery, Alabama 36104
Telephone: 334-263-6621
Facsimile: 334-263-7252

*s/ John J. Coleman, III*
John J. Coleman, III (COL044)
Marcel L. Debruge (DEB006)
Frank McRight (MCR002)
Matthew T. Scully (SCU005)
Attorneys for Plaintiff
Lear Corporation EEDS and Interiors

BURR & FORMAN LLP
3400 Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: 205-251-3000
Facsimile: 205-458-5100

## VERIFIED COMPLAINT

I, Connie Messer, Human Resources Manager of Lear Corporation EEDS and Interiors, verify that I am informed and believe, and on the basis of such information and belief, state that the facts set forth in the foregoing Verified Complaint are true and complete, to the best of my personal knowledge.

_Connie Messer_
Lear Corporation EEDS and Interiors

By: Connie Messer

Its Human Resources Manager

STATE OF Ohio            )
COUNTY OF Licking        )

I, Shalan Bergeson, a Notary Public in and for said County in said State, hereby certify that Connie Messer, whose name is signed to the foregoing VERIFIED COMPLAINT, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal, this 18th day of March, 2015.



SHALAN BERGESON
Notary Public, State of Ohio
My Commission Expires
February 25th, 2019

_Shalan Bergeson_
NOTARY PUBLIC

My Commission Expires: 02/25/2019

23107901.v1

11